IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TEAMSTERS LOCAL UNION NO. 957,

    Plaintiff,

v.

PENSKE TRUCK LEASING CO.,

    Defendant.

Case No. 3:23-CV-18-WHR-CHG

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION TO DISMISS, DOC. #11, DISMISSING THE CASE AS BARRED BY THE STATUTE OF LIMITATIONS; JUDGEMENT TO ENTER IN FAVOR OF DEFENDANT AND AGAINST PLAINTIFF; TERMINATION ENTRY

---

Plaintiff, Teamsters Local Union No. 957 ("Teamsters"), filed suit against Penske Truck Leasing Company ("Penske") on January 18, 2023, seeking to enforce the arbitration clause under their collective bargaining agreement.[1] Doc. #1. Penske answered the complaint on March 20, 2023, Doc. #7, and then moved to dismiss the complaint as barred by the statute of limitations. Doc. #11. Teamsters filed a Response in Opposition, Doc. #13, and Penske replied by filing a supplemental memorandum. Doc. #14. For the reasons outlined below, the motion is SUSTAINED.

---

[1] This Court's jurisdiction is based on a federal question "arising under" the Constitution or laws of the United States. 28 U.S.C. §§ 1331, 1343(3).

I.  **Background and Procedural History**

Teamsters and Penske signed a collective bargaining agreement ("the contract") on or about March 14, 2019. Doc. #3 at PageID #51. Among the terms of the contract was a provision stating that the contract "shall also apply to future Penske operations commenced in the greater Dayton, Ohio area where Penske is contracted to provide truck maintenance and leasing services." *Id.* at PageID 51–52. The contract also incorporated a Letter of Understanding between the parties that "any new Penske facility opened to service an account" that had been previously "assigned to Penske at Dayton, Ohio . . . would remain on the Dayton Master Seniority List for purposes of layoff, recall, and job openings." *Id.* at PageID #52. Finally, the contract had a provision for handling grievances and "alleged violation[s] of a specific provision of [the contract]" through arbitration. *Id.*

Two years later in March of 2021, Mark Morrell ("Morrell"), a Business Representative working for Teamsters, learned that Penske had opened a new location in Piqua, Ohio.[2] *Id.* Morrell then sent a demand to Penske that the Piqua location be included in the contract. *Id.* When Penske did not apply the contract to the Piqua location, Teamsters filed a grievance on or around May 6, 2021, claiming that Penske had breached the contract by failing to apply the contract to work

---

[2] Plaintiff asserts in the Complaint that Piqua, Ohio, is located in the U.S. Census Bureau's definition of the "Dayton, Ohio Metropolitan Statistical Area;" Doc. #13 at PageID #52; however, this assertion was not supported by any documentation or citation, and the Court makes no findings of fact on the matter.

2

performed at the Piqua location. *Id.* Penske denied the grievance on May 10, 2021, stating that the grievance was "a matter of contract interpretation." *Id.*

After following the grievance procedure laid out in the contract, Teamsters submitted a demand for arbitration on June 15, 2021, and sent a Request for a Panel of Arbitrators based on the terms of the contract. *Id.* at PageID 52–53. On July 27, 2021, Penske sent a separate Request for a Panel of Arbitrators to deal with the grievance. *Id.* at PageID #53. Then, on August 12, 2021, Penske informed Teamsters through counsel that it would not process the grievance. *Id.* Instead, Penske filed a Unit Clarification Petition with the local region of the National Labor Relations Board ("NLRB") that sought to exclude personnel from the Piqua location from the contract. *Id.*

After holding a hearing on the petition September 2, 2021, the NLRB issued a decision on October 1, 2021, granting Penske's Unit Clarification Petition and excluding the Piqua location from the bargaining unit represented by Teamsters. *Id.*[3] According to the Complaint, while the NLRB observed that "there may be a contractual dispute" over whether Penske violated the contract in failing to arbitrate the grievance, they ultimately found that the parties' issue landed on an application of statutory policy and was thus properly resolved by the NLRB. *Id.* at PageID #53–54. On October 18, 2021, Teamsters filed a Request for Review of

---

[3] While Teamsters quotes from the NLRB's decision in the Complaint, a full copy of the decision is not included in any filings.

3

the Regional Director's Decision and Order with the NLRB, which was denied on July 12, 2022. *Id.* at PageID #54. In its denial, the NLRB observed that the status of the Piqua employees "might ultimately be resolved in some other forum, on some other legal basis," and agreed with the prior NLRB decision that there may be a contractual dispute over how Penske handled the contract and the grievance over the Piqua location. *Id.*[4] Following the NLRB's July 12, 2022, denial, and upon an undated successive demand for arbitration by Teamsters, Teamsters claims that Penske has failed to participate in arbitration over the issue as required by the contract. *Id.*

Teamsters filed suit on January 18, 2023, Doc. #1, and Penske answered on March 20, 2023. Doc. #7. On May 19, 2023, Penske moved to dismiss the complaint as barred by the statute of limitation. Doc. #11. Teamsters filed a Response in Opposition, Doc. #13, and Penske replied by filing a supplemental memorandum. The motions are ripe for review.

## II. Legal Standard

Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must provide the defendant with "fair notice of what the

---

[4] While Teamsters quotes from the NLRB's denial of the rehearing in the Complaint, a full copy of the denial is not included in any filings.

4

. . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint on the basis that it "fail[s] to state a claim upon which relief can be granted." The moving party bears the burden of showing that the opposing party has failed to adequately state a claim for relief. *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)). The purpose of a motion to dismiss under Rule 12(b)(6) "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). In ruling on a 12(b)(6) motion, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis,* 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Treesh*, 487 F.3d at 476).

Nevertheless, to survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Unless the facts alleged show that the plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. "Rule 8 . . . does not

5

unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Legal conclusions "must be supported by factual allegations" that give rise to an inference that the defendant is, in fact, liable for the misconduct alleged. *Id.* at 679.

In ruling on a motion to dismiss, the Court may consider "the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

### III. Analysis

The parties agree that the claim arises under the Labor Management Relations Act of 1947, 29 U.S.C. § 141 et seq., and that the Court's jurisdiction over the instant matter stems from Section 301 of that Act. 29 U.S.C. § 185. Under the Act, claims filed by employees against their employers are limited by a six-month statute of limitations, *DelCostello v. Int'l Bd. of Teamsters et al.*, 462 U.S. 151, 169 (1983), and this statute of limitations has been extended to include pure Section 301 suits undertaken by unions seeking to compel employers to arbitrate a grievance. *McCreedy v. Local 971, UAW*, 809 F.2d 1232, 1237–39 (6th Cir. 1987). The statute of limitations begins to run "when [one party] takes an unequivocal position that it will not seek arbitration." *Id.* at 1237. The question at issue here is if, and when, Penske unequivocally took the position that it would not arbitrate the grievance.

6

The Sixth Circuit has held that a party's refusal to arbitrate is unequivocal when it is "immediate, blunt, and to the point." *Int'l Union v. Cummins, Inc.*, 434 F.3d 378, 483 (6th Cir. 2006) (citation omitted). While a "party resisting arbitration . . . [need not] utter[] the magic words 'we refuse to arbitrate this dispute'" to show unequivocal refusal, *Warehouse Emples., Local Union No. 661 v Zenith Logistics, Inc.*, 550 F.3d 589, 593 (6th Cir. 2008) (quoting *In re Diamond D Constr. Corp.*, 15 F. Supp. 2d 274, 289 (W.D.N.Y. 1998)), their refusal must be such that "the Union should have understood [the employer's] . . . response to be an unequivocal refusal to arbitrate." *Id.* at 593. For example, a refusal is not unequivocal when the employer's response also seeks additional information regarding the grievance and the request to arbitrate. *See Teamsters Local Union No. 783 v. Anheuser-Busch, Inc.*, 626 F.3d 256, 260 (6th Cir. 2010).

When viewing the pleadings in the light most favorable to Teamsters, the Court finds that Penske unequivocally indicated its refusal to arbitrate on August 12, 2021. The Complaint states that Penske informed Teamsters through counsel that it would not process the grievance through to arbitration and submitted the Unit Clarification Request to the local region of the NLRB on the same day. Doc. #3 at PageID #53. The Complaint does not elaborate on how Teamsters received the notification besides stating "via . . . counsel," *id.*, nor does Teamsters inform the Court on when or how they learned that Penske had filed the Unit Clarification Request. *Id.* However, Penske's refusal to arbitrate came after it had first requested its own panel of arbitrators to process the grievance less than a month

7

prior. *Id.* This unequivocal about-face by Penske, demonstrated by its simultaneous refusal to arbitrate and submission of the Unit Clarification Request, shows that Penske's refusal was sufficiently "immediate, blunt, and to the point," *see Cummins, Inc.*, 434 F.3d at 483, that Teamsters "should have understood [Penske's] . . . response to be an unequivocal refusal to arbitrate." *Zenith Logistics, Inc.*, 550 F.3d at 593.

Teamsters contends that, because Penske's August 12, 2021, notification "that it did not believe the matter was arbitrable is not currently part of the record," Doc. #13 at PageID #130, the motion should be dismissed as the lack of documentation is fatal when viewing the pleading in "the light most favorable to" Teamsters. *Id.* at PageID #131. The Court finds this argument unavailing. As previously stated, the standard for unequivocal refusal does not require some hagiographic statement evidenced in writing. *See Zenith Logistics, Inc.*, 550 F.3d at 593. Instead, it only needs to be "immediate, blunt, and to the point," i.e., succinct and clear enough, that the refusal is reasonably understood to have been unequivocal. *See Cummins, Inc.*, 434 F.3d at 483. Here, after previously requesting a panel of arbitrators, Penske's decision to reverse course by telling Teamsters that it was no longer willing to arbitrate was sufficiently clear enough to be understood as unequivocal. While documentary proof of the exact language Penske used to communicate that refusal might further support the fact that it was unequivocal, the Court disagrees with Teamsters that the absence of such evidence is fatal to Penske's instant motion. In its Complaint, Doc. #3, Teamsters

8

plainly states that "Penske notified [Teamsters], via the parties' respective counsel, that it would not process the grievance to arbitration," which was followed by a concurrent Unit Clarification Petition with the local region of the NLRB. *Id.* at PageID #53. Therefore, based on the Complaint's straightforward presentation of Penske's actions and the surrounding circumstances, the Court finds that Teamsters was informed of Penske's unequivocal refusal to arbitrate on August 12, 2021. Further, because the six-month statute of limitations began to run on this date, Teamsters' window to file the instant suit had long since closed by the time this action was brought in January of 2023.

## IV. Conclusion

For the reasons set forth above, the Court SUSTAINS Penske's motion to dismiss. Doc. #13.

Judgement is to be entered in favor of Defendant and against Plaintiff. The captioned case is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

Date: January 19, 2024

_____
WALTER H. RICE
UNITED STATES DISTRICT JUDGE

9